IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MADELEINE RODGERS-GLASS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-14-3300 |
| | § | |
| CONROE HOSPITAL CORPORATION AND | § | |
| HOSPITAL CORPORATION OF AMERICA | § | |
| a/k/a HCA, INC., | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER DISMISSING CASE AND COMPELLING ARBITRATION**

The above referenced action, removed from state court on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a), alleges discrimination, retaliation, unlawful termination, violations of the Family Medical Leave Act, the Americans With Disabilities Act, the Health Insurance Portability and Accountability Act, Title VII of the Civil Rights Act of 1964 and, as amended, 1991, the Age Discrimination in Employment Act, the Employment Retirement Income Security Act, and Section 52.031 of the Texas Labor Code (offense of blacklisting, i.e., publishing the name of a former employee to prevent her from securing other employment, punishable by fine or imprisonment), defamation, slander, invasion of privacy, intentional infliction of emotional distress, etc. Pending before the Court is Defendants Conroe Regional Medical Center[1] ("the hospital") and Hospital Corporation

_____

[1] Defendants note that the Conroe Regional Medical Center, Plaintiff's employer, is incorrectly named as Conroe Hospital Corporation, and they state that HCA was not Plaintiff's employer, as they indicated in the "Verified Denial" part of their Original Answer filed in state court. #1-1, p. 1; #4, p. 1, n.1. Plaintiff objects that Conroe Hospital Corporation, named in the certified records of the Texas Secretary of State (copies attached

of America a/k/a HCA, Inc.'s ("HCA's") motion to dismiss and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, because Plaintiff and everyone working at the Conroe Regional Hospital, Plaintiff Madeleine Rodgers-Glass's former employer, are subject to a Mandatory Binding Arbitration Policy ("the Policy").[2]

**Defendants' Motion to Dismiss and Compel Arbitration**

Defendants explain with a supporting, notarized affidavit (Exhibit A) from Diana Howell, Director of Human Resources for the hospital,[3] that the Policy was implemented on

_____

to Response), has the same address as HCA in those records.

[2] A copy of the Policy is attached to the motion as Exhibit A-1.

[3] Plaintiff complains that Howell's affidavit states that she works for "Conroe Regional Hospital" and not the Defendant named in the Original Petition. The Court notes that "Conroe Regional Hospital" is found on page 1 of the affidavit, but on page 2 Howell refers twice to the "Conroe Regional Medical Center." An internet search indicates they are one and the same. The names are used interchangeably in this litigation. Plaintiff further contends, without specific examples, that the affidavit is conclusory, lacks foundation, is speculative, and fails to establish any connection between Plaintiff and Defendants to effectively evidence any agreement to arbitrate her claims. The Court disagrees. In an affidavit "[p]ersonal knowledge may be demonstrated by showing that the facts stated 'reasonably' fall within the 'sphere of responsibility' of the affiant as a corporate employee." *Cutting Underwater*, 671 F.3d at 516, *quoting DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005)(citation omitted), and *Rutledge v. Liab. Ins. Indus.*, 487 F. Supp. 5, 7 (W.D. La. 1979)("An official title alone is enough to indicate the basis of personal knowledge . . . ."). An affiant does not need to state that his affidavit is based on personal knowledge as long as such knowledge can reasonably be inferred from the affiant's position. *Id*. at 530. As Director of Human Resources at the hospital since 2004, Howell states that she is familiar with the policies and procedures applicable to the employees at the hospital, including the Mandatory Binding Arbitration Agreement, and avers that true and correct copies of the Policy (Ex. A-1) and sign-in sheet with

January 1, 2006.  Under Texas law arbitration agreements are enforceable  when there is notice of the policy and acceptance of its terms, regardless whether there is a signed arbitration acknowledgment form.  *See, e.g., In re Dillard Dep't Stores, Inc.*, 198 S.W. 3d 778, 781 (Tex. 2006); *In re Halliburton*, 80 S.W. 3d 566 (Tex. 2002), *cert. denied*, 537 U.S. 1112 (2003).  Howell's affidavit asserts that all new employees are informed about the Policy during a New Employee Orientation process, in which Plaintiff, who began work at the hospital on June 17, 2010, participated on July 19, 2010, as evidenced by the sign-in sheet for that date, Exhibit A-2.  Moreover Howell avers that it is on

---

Plaintiff's signature for those attending the July 19, 2010 orientation for new employees(Ex. A-2) are attached.  As stated in *In Estate of* Guerreo,, ____ S.W. 3d ____, 2015 WL 1884068, at *6 (Tex. App.--Houston [14th Dist.] Apr. 23, 2015),

> The evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment.  *In re Jebbia*, [26 S.W. 3d 753, 756-57 (Tex. App.--Houston [14th Dist.] 2000)].  Under the summary judgment standard, copies of documents must be authenticated in order to constitute summary judgment evidence.  *See Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W. 2d 606, 607 (Tex. 1986)(per curiam); *see also Niu v. Revcor Molded Prod. Co.*, 206 S.W. 3d 723, 729 (Tex. App.--Fort Worth 2006, no pet.).  A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence.  *Republic*, 717 S.W. 2d at 607; *see also Jack B. Anglin Co. [v. Tipps*, 842 S.W. 2d 266, 270 (Tex. 1992)] (relying on summary judgment precedent to hold that the trial and appellate courts must accept as true the clear, direct, and positive evidence of an undisputed affidavit supporting a motion to compel arbitration.).

the hospital's intranet and available to all employees at all times.  Because Plaintiff  accepted work after receiving notice of the arbitration agreement during the new employee orientation policy, she accepted the mandatory binding arbitration as a matter of law as a condition of employment. *Dillard*, 198 S.W. 3d at 780 ("An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of its arbitration policy and accepted it. . . . If the employee receives notice and continues working with the knowledge of the modified employment terms, the employee accepts them as a matter of law."), *citing In re Halliburton Co.*, 80 S.W. 3d at 568.

The Policy at issue states in relevant part,

> [B]oth the employee and [the Hospital] agree to give up any right either party has to a jury or judge trial regarding any issue governed by the Mandatory Binding Arbitration Policy.  All disputes governed by the Mandatory Binding Arbitration Policy shall be submitted to final and binding arbitration to be conducted by an experienced Arbitrator from the American Arbitration Association (AAA) chosen by the employee and the company. The employee and the Employer will be bound by the decision made by the third party neutral arbitrator . . . .

The Policy expressly requires arbitration for the following claims, among others:

> -claims relating to involuntary terminations . . .
>
> -employment discrimination claims . . . based on . . . age . . . race, sex, religion, national origin, veteran status, citizenship, disability or other characteristics protected by federal, state or local law.
>
> -retaliation claims as recognized by applicable state or federal law

-4-

-claims relating to workplace accommodation due to any physical or mental disabilities

-claims related to state or federal family and medical leave acts . . . .

-tort claims, such as negligence, defamation, invasion of privacy, intentional infliction of emotional distress, etc.

Finally, the Policy's Mandatory Binding Arbitration Agreement states just above the signature line, "This Agreement shall be governed exclusively by and interpreted exclusively under the Federal Arbitration Act, 9 U.S.C. §§ Sections 1-16 giving effect to that Act's liberal policy toward enforcement of arbitration agreements."  Exhibit A-1.[4]

Defendants maintain that all of Plaintiff's claims fall within the scope of the arbitration agreement because they are related to her discharge and the alleged discrimination/retaliation in violation of the Family Medical Leave Act and the Texas Labor Code.

### Plaintiff's Response (#8)

Plaintiff objects that the copy of the arbitration agreement attached to the motion is not executed by her.

She also contends that the agreement does not state that there is a binding agreement to arbitrate between HCA and herself. Moreover if HCA is not her employer, and if consideration for the arbitration agreement is "continued employment," the arbitration provision cannot be enforced against her by HCA.

--------

[4] It is black letter law that parties may expressly agree to arbitrate under the FAA.  *In re Rubiola*, 334 S.W. 3d 220, 223 (Tex. 2011).

In addition Plaintiff contends that her claims other than for discrimination and wrongful termination are not within the scope of the arbitration provision.

Moreover, Plaintiff observes that the Policy (Ex. A-1) states that it was "Reviewed 1/12." Since she was hired on July 19, 2010, she asserts that the Policy is not the one in place at the time she was employed and there is no evidence that she ever received actual notice of it. That she attended an employee orientation and signed the attendance sheet is not evidence that she agreed to binding arbitration for her claims against the hospital.

Next she argues that the Policy is a modification of the employment-at-will agreement she had with the hospital and that the hospital failed to provide her with notice of the modification. Therefore it cannot be enforced against her.

Last, Plaintiff insists alternatively that Defendants, without legal justification, breached the employment-at-will agreement with her in failing to comply with their own policies and procedures regarding employment dealings and treatment of protected healthcare information, so they are estopped from asserting mandatory binding arbitration that the alleged nonemployer HCA has imposed.

### Defendants' Reply (#9)

Defendants point out that the Policy (Exhibit A-1) clearly indicates that it was implemented on January 1, 2006, as does Howell's affidavit, and that it was the version in effect when Plaintiff's employment was terminated. Ex. A-1. That the

hospital reviews policies every now and then does not render a prior version of the Policy inapplicable. Moreover Howell's affidavit states that all policies are available on the hospital's intranet.

It is long established that a signature is not required for an arbitration to be binding on an employee. *In re RRGT, Inc.*, No. 04-06-00012-CV, 2006 WL 622736 (Tex. App.--San Antonio 2006)(holding that employee did not sign arbitration agreement but continued to work, and therefore accepted arbitration as a term of employment); *In re Autotainment Partners, Ltd.*, 183 S.W. 3d 532, 535-36 (Tex. App.--Houston [14[th] Dist.] 2006)(holding that "the FAA does not require that an arbitration clause be signed, so long as it is written and agreed to by the parties"), *citing In re AdvancePCS Health, LP*, 172 S.W. 3d 603, 606 (Tex. 2005). Defendants point out that portions of page 7 and pages 8 and 9 of the Policy are not signature blocks to indicate acceptance of the policy, but are forms for an employee to initiate a claim under the policy. See p. 7 requiring employee to describe his claims and the damages he seeks. The Policy does not require a signature. Because Plaintiff had notice of the Policy and accepted its terms by her continued employment, she is bound by its terms.

Defendants also insist that all of Plaintiffs' claims are covered by the Policy as evidenced by the long list of claims specifically covered on page 4.

Defendants further maintain that the Policy was supported by adequate consideration, i.e., Plaintiff's continued

employment for four years.  *See, e.g., Alex Sheshunoff Mgmt. Servs., LP v. Johnson*, 209 S.W. 3d 644, 665 (Tex. 2006)(holding that an agreement conditioned on continued employment becomes enforceable upon the employee's continuation in the job.).  Under Plaintiff's no-consideration argument, no arbitration provision or policy would ever be enforceable if the employee was terminated at some point.

Plaintiff, herself, has claimed that she was employed by HCA, yet simultaneously argued that HCA should not receive the benefit of the arbitration provision.  Her Original Petition alleged that HCA unlawfully discriminated against her and retaliated against her, violating *inter alia*, Title VII, a statute under which liability extends only to "employers."  42 U.S.C. § 2000e-2(a).  Texas Civ. Prac. & Rem. Code § 9.011 states that the signing of pleadings constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief the pleading is not groundless and brought in bad faith.  The Policy extends to HCA in stating that its purpose is to "provide Texas Affiliated Employers a consistent means for employees to resolve disputes."  Ex. A-1 at p. 4.  Thus both defendants should receive the benefit of the arbitration provision.

### Substantive Law and Its Application Here

The FAA, 9 U.S.C. § 2, provides, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." The term "involve" is broadly construed as meaning "affect." *In re Koch Industries, Inc.*, 49 S.W. 3d 439, 433 (Tex. App.--San Antonio 2001), *citing Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 277-81 (1995); *In re Tenet Healthcare Ltd.*, 84 S.W. 3d 760, 765 (Tex. App.--Houston [1st Dist.] 2002,). Thus "[a] transaction "involves commerce if the transaction turns out in fact to involve commerce even if the parties did not contemplate an interstate connection." *Koch*, 49 S.W. 3d at 433, *citing Allied Bruce*, 513 U.S. at 282. The question is not whether the parties' dispute concerns a transaction that affects interstate commerce, but whether their dispute concerns a transaction that affects interstate commerce. *Jack B. Anglin Co. v. Tipps*, 842 S.W. 2d 266, 271 (Tex. 1992)("Here, the material evidence before the court consisted of pleadings, the contract, and Jack Anglin's affidavit, which states that Anglin transported material across state lines pursuant to the contract and prepared the billings for the job in Michigan."); *In re Education Mgmt. Corp.*, 14 S.W. 3d 418, 423 (Tex. App.-Houston [14th Dist.] 2000). Diana Howell's uncontroverted, notarized affidavit states, "Conroe Medical Center engages in interstate commerce through the receipt of goods and services from out of state vendors. Conroe Regional Medical Center also provides services to individuals who reside outside the State of Texas." Ex. A. Thus the interstate commerce requirement is met.

Whether an arbitration agreement is enforceable is a question of law. *In re Estate of Guerrero*, ___ S.W. 3d ___, 2015 WL 1884068, at *4 (Tex. App.--Houston [14th Dist.] Apr. 23, 2015),

*citing M.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 227 (Tex. 2003). Furthermore, "absent unmistakable evidence that the parties intended the contrary," whether it is a valid and enforceable agreement is a matter to be determined by the court rather than by the arbitrator. *In re Weekley Homes, LP,* 180 S.W. 3d 127, 130 (Tex. 2005); *In re Labatt Food Service, LP*, 279 S.W. 3d 640, 643 (Tex. 2009).

The initial questions for the Court in addressing a motion to compel arbitration are (1) was there a valid agreement to arbitrate between the two parties and (2) does the dispute at issue fall within the scope of that agreement. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012), *citing JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). After reviewing the record and the applicable law, the Court concludes for the reasons stated below there was a valid agreement to arbitrate and that the parties agreed to arbitrate all of the causes of action asserted by Plaintiff here.

The liberal federal policy favoring arbitration does not apply to the determination whether there is a valid contract to arbitrate between the two parties; instead, because arbitration is a matter of contract, the Court looks to "ordinary state-law principles that govern the formation of contracts," here the law of Texas. *Id., citing Morrison v. Amway Corp.,* 517 F.3d 248, 254 (5th Cir. 2008), and *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 227 (Tex. 2003).

Whether an arbitration agreement binds a nonsignatory is central here since none of the parties signed the agreement. A party may prove the existence and execution of the arbitration agreement by attaching to its motion to compel an affidavit proving up the agreement and stating that the nonmovant entered into the agreement, as the affidavit of Diana Howell does here (Ex. A). *In re Estate of Guerrero*, ____ S.W. 3d ____, 2015 WL 1884068, at *6 (Tex. App.--Houston [14th Dist.] Apr. 23, 2015), *citing Citigroup Global Markets, Inc. v. Brown*, 261 S.W. 3d 394, 400 (Tex. App.--Houston [14th Dist.] 2002). Moreover, as Defendants argued, under Texas law a party may be bound by an arbitration agreement even absent its signature: the FAA "only requires that an arbitration clause be in writing, without any requirement that an arbitration clause must be signed, thus no signatures are necessary to bind parties to an arbitration agreement." *Perez v. Lemarroy*, 529 F. Supp. 2d 924, 9 (S.D. Tex. 2008), *citing* 9 U.S.C. § 2; *Lora v. Providian Bancorp Servs*., No. EP-05-CA-045-DB, 2004 WL 1743878, at *3 (W.D. Tex. July 22, 2005)(lack of employer's signature on an employment agreement did not prevent the employer from enforcing the arbitration clause). "Under Texas law, an employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *Washington v. Sears Logistics Services, Inc.*, No. 3:13-CV-3060-L, 2014 WL 2159253, at *4 (N.D. Tex. May 23, 2014), *citing In re Dallas Peterbilt, Ltd., LLP*, 196 S.W. 3d 161, 162 (Tex. 2006). Plaintiffs' continued employment at the hospital

after notice of the arbitration Policy constitutes acceptance of the arbitration policy. *PAK Foods Houston, LLC v. Garcia*, 433 S.W. 3d 171 (Tex. App.-Houston [14th Dist.] 2014)("An employer may enforce an arbitration agreement entered during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it by continuing to work after knowledge of the policy."), *citing In re Dallas Peterbilt*, 196 S.W. 3d at 162.

Under Texas law an agreement to arbitrate must be supported by consideration. *Mendivil v. Zanios Foods, Inc.*, 357 S.W. 3d 827, 831 (Tex. App.--El Paso 2012). Consideration supporting an agreement may take the form of mutual promises to submit a dispute to arbitration, as here. *In re 24R, Inc.*, 324 S.W. 3d 564, 566 (Tex. 2010).

A contract's "arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re Odyssey Healthcare, Inc.*, 310 S.W. 3d 419, 424 (Tex. 2010). No language in the contract at issue here permits unilateral amendment or termination of the contract.

"[A] written agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004). Plaintiff has not alleged that the

arbitration agreement was the product of fraud or coercion or that it should be revoked.

Regarding Plaintiff's assertion that there is no agreement to arbitrate between HCA, which was not her employer, and herself, the Court disagrees.  A quick internet search reveals that HCA is the largest healthcare provider in the United States, with 165 hospitals and 115 freestanding surgery centers that are locally managed; Conroe Regional Medical Center is one of those hospitals affiliated with HCA.  *Black's Law Dictionary* (6th ed. 1990) at p. 58 defines "affiliate" as "a condition of being united; being in close connection, allied, associated, or attached as a member or branch."  It defines "affiliate company" as one "effectively controlled by another company."  *Id.*  The Court further highlights the fact that the Binding and Mandatory Arbitration Policy itself reflects a strong affiliation.  At the top of the Policy in very large, bold letters is HCA.  The Policy does not mention the hospital, but instead expressly and generally addresses Company-affiliated subsidiaries in Texas.  The first subject matter box, titled "**SCOPE**," states,

> All Company-affiliated subsidiaries located in Texas including, but not limited to hospitals, ambulatory surgery centers, outpatient imaging centers, physician practices, All About Staffing, Corporate Departments, Groups, and Divisions (collectively, Texas Affiliated Employers" and individually, "Texas Affiliated Employer").

Underneath **SCOPE**, it defines as its "**PURPOSE**":  "To provide Texas Affiliated Employers a consistent means for employees to resolve disputes as outlined below in the Procedure section through

binding arbitration."   Under "**POLICY**" it provides in part, " Under the Mandatory Binding Arbitration Policy, both the employee and the Texas Affiliated Employer agree to give up any right either of them might have to a jury or judge trial regarding any issue governed by the Mandatory Binding Arbitration Policy."

Furthermore, the United States Supreme Court held in *Arthur Andersen, LLP v. Carlise*, 556 U.S. 624, 631 (2009), that a nonsignatory may enforce an arbitration clause against a signatory under the FAA if the relevant state contract law permits it to do so.  After *Carlisle*, nonsignatories to arbitration agreements can be compelled to arbitration based on traditional state law principles including piercing the corporate veil, alter ego, third-party beneficiary theories, waiver, and estoppel.  *Id.* at 630.  *See, e.g., Todd v. Steamship Mutual Underwriting Assoc. (Bermuda) Ltd.*, 601 F.3d 329, 336 (5ᵗʰ Cir. 2010)("In *Carlisle*, the Supreme Court made clear that state law controls whether an arbitration clause can apply to nonsignatories."),   *cited by Harland Clarke Holdings, Corp. v. Milken*, 997 F. Supp. 2d 561. 580 (W.D. Tex. 2014).  Indeed before  *Carlisle* Texas law permitted nonsignatories to enforce an arbitration agreement against a nonsignatory based on traditional state contract law theories. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F. 3d 347, 356 (5ᵗʰ Cir. 2003)("Six theories for binding a nonsignatory to an arbitration agreement have been recognized:  (a) incorporation by reference;  (b) assumption;  (c) agency;  (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary."); *Cappadonna Elec. Management v. Cameron County*, 180 S.W. 3d 364, 370 (Tex.

App.--Corpus Christi 2005)(same), *citing In re Kellogg, Brown & Root*, 166 S.W. 3d 732, 739 (Tex. 2005); *LFD Const., Inc. v. Bryan*, 324 S.W. 3d 137, 147-48 (Tex. App.-Waco 2010). Whether a nonsignatory can compel arbitration under an arbitration provision is a legal matter for the court to determine. *Opro, Inc. v. RTD Quality Services, USA, Inc.*, 761 F. Supp. 2d 492, 497 (S.D. Tex. 2011)(*citing Carlisle*, 556 U.S. at 630).

In *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526-28 (5th Cir. 2000)(allowing a non-signatory to a contract with an arbitration clause to compel arbitration against a nonsignatory)(*citing MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)), *cert. denied*, 531 U.S. 1013 (2000)), the Fifth Circuit estopped a signatory plaintiff on equitable estoppel grounds from using a defendant's nonsignatory status to prevent defendants from compelling arbitration under the agreement when the signatory plaintiff raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. The appellate court's rationale was that equitable estoppel applies to limit a party from "having it both ways." *Id.* at 528. "A plaintiff cannot, on the one hand seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability by claiming that the defendant is a non-signatory." *Id.* Even though neither Plaintiff nor the hospital signed the agreement, Plaintiff, as noted, received notice of it and both parties accepted the benefits of their employment agreement, and

are thus bound by it.  The Court agrees with Defendants that she named HCA to the suit and asserted all claims against both Defendants.  The Mandatory Binding Arbitration Policy references only HCA and generally its affiliated Texas subsidiaries and reflects substantial involvement of HCA.  Thus the Court finds that Plaintiff is estopped from arguing that HCA cannot enforce the arbitration provision against her.  *See also In re Koch Indus.*, 49 S.W. 3d 439, 447 (Tex. App.--San Antonio 2001, mandamus denied (June 11, 2001))(holding that nonsignatory defendants affiliated with signatory defendant company could enforce arbitration agreement against signatory plaintiff when the same operative facts were involved.);  *In re Kenwood Communications Corp.*, No. 04-02-00377-CV, 2003 WL 1191409, at *4 (Tex. App.--San Antonio Mar. 12, 2003)(*citing In re Koch* as standing for principle that "where claims against affiliated companies are inherently inseparable from claims against party to agreement, arbitration may be compelled.").

The Court concludes that there is a valid agreement to arbitrate here and that Plaintiff's continued employment constitutes acceptance of that agreement by both Plaintiff and Defendants.  *Sears Logistics,* 2014 WL 2159253, at *4  *citing In re Dillard Dep't Stores*, 198 S.W. 3d at 780-81.

"'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523  F.3d 528, 534 (5th Cir. 2008), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  The Court finds  that

Plaintiffs' causes of action fall within the scope of that agreement. Defendants have demonstrated that Plaintiff attended the Orientation Meeting and was given full notice of the arbitration agreement. Plaintiff's continued employment constitutes acceptance of that agreement, as does Defendants'. In the context of employment, mandatory arbitration agreements are usually enforceable, as the case law demonstrates. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 124 (2001); *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996)(Title VII claims subject to mandatory arbitration provision); *Taylor v. University of Phoenix/Apollo* Group, 487 Fed. Appx. 942 (5th Cir. 2012)(FMLA and ADA)[5]; In *re Choice Homes, Inc.*, 174 S.W. 3d 408, 413 (Tex. App.--Houston [14th Dist.] 2005)(defamation). "[C]ourts have regularly held that claims by employees arising under federal and state employment statutes are subject to the FAA and mandatory arbitration." *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 675 n. 1 (5th Cir. 2006)(listing examples). *See also Colt Unconventional Resources, LLC v. Resolute Energy Corp.*, CA No. 3:13-CV-1324-K, 2013 WL 3789896, at *5-6 (N.D. Tex. July 19, 2013)(addressing arbitration of a tortious interference with contract claim)("Under Texas law, whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint instead of the legal causes of action asserted").

---

[5] *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 218 (5th Cir. 1997)("Congress did not intend to exclude the ADA from the scope of the FAA.").

After the party seeking to compel arbitration demonstrates that a valid arbitration agreement exists, the burden shifts to the nonmovant to establish a defense to enforcement (e.g., unconscionability, duress, fraudulent inducement, revocation).  If the nonmovant fails to meet this burden, the trial court must compel arbitration.  *In re FirstMerit Bank, N.A.*, 52 S.W. 3d 749, 753-54 (Tex. 2001).  *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (Arbitration agreements, like other contracts, may be invalidated by contract defenses like fraud, duress, unconscionability, or waiver.); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5 th Cir. 1986)(same).  Plaintiff has failed to allege, no less support a defense to enforcement here.

Although section 3 of the FAA provides that when the court properly and mandatorily refers claims to arbitration it shall stay the case until arbitration is complete, "[t]he weight of authority clearly supports dismissal of the case [as opposed to staying the suit] when *all* of the issues raised in the district court must be submitted to arbitration."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5 th Cir. 1992), *cited by Innova Hosp. San Antonio, LP v. Blue Cross and Blue Shield of Texas*, 995 F. Supp. 587, 613 (N.D. Tex. 2014). *See also Fedmet Corp. v. M/V Buyalyk* , 194 F.3d 674, 676 (5 th Cir. 1999)(holding that "district courts have discretion to dismiss cases in favor of arbitration,: but not implying any obligation to do so."); *Apacje Bohai Corp. LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5 th Cir. 2003)(*Alford* "held that dismissal was not an abuse of

discretion," not that "dismissal was required under the circumstances."). All Plaintiffs' claims against both parties are subject to mandatory arbitration here. Thus the Court in its discretion chooses dismissal as the appropriate procedure.

Accordingly the Court

ORDERS that Defendants' motion to dismiss and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, is GRANTED in full.

**SIGNED** at Houston, Texas, this __10th__ day of __July__, 2015.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE